Robert Finkel, Law Firm of Wolf Pauper, LLP Christopher Heffelfinger, Burman Tobacco Appeal from two orders of the District Court dismissing Northstar's complaint, finding that the complaint was predicated on allegations of falsity. As Your Honors know from Northstar V, which the Ninth Circuit decided in 19 — in 2015, this case relates to a shareholder vote in 1997 that established a fundamental investment principle to track an index. In 2015, this Court found that that was a contract claim. The elements of the contract claim were an offer pursuant to the proxy statement, an acceptance either by voting in favor of the proxy or by buying shares, breach by investing in other types of securities. But, Counsel, I don't really understand how you can rely on Northstar V when the SLUSA issue was expressly not decided and the case was remanded to the District Court to assess that question. Well, because the SLUSA inquiry requires looking at the elements of the claim and determining whether it is a predicate to the contract claim to prove falsity. And since there's no predicate — Well, that's your characterization of the standard, but that's not the characterization in the standard in — that the trial court applied, correct? The trial court described the standard as very different than that and said it doesn't have to be a predicate for the particular claim. And it only has — you're supposed to look at the totality of the allegations and assess whether or not they really sound in misrepresentation as opposed to contract. Well, that's where I believe the Court committed error. Among other things, the complaint was very clear that it was predicated only on a contract and breach of fiduciary duty. There was no allegations of falsity in the complaint. And if you look at what my adversary says were allegations of falsity on pages 124 and 163 of the record, there are no allegations of falsity whatsoever in the complaint. The Court found for — you know, after saying that the core allegations are a promise and a deviation from the promise and a breach and damages, found that the predicate somehow behind the complaint was a false statement that was issued in 2007. Wasn't that exactly what this Court said in Hampton? Well, Hampton's very different because that was just an investment policy. The way the mutual fund industry works is that some policies are fundamental. Those can't be changed without a vote. And in Lapidus and subsequently in North Straw V that followed Lapidus, this Court found that those are contract claims. Now, I know that the Court reserved on SLUSA but did not indicate in which way the Court would go. In Hampton, what we said was that the gist of the allegations, what this Court said, was the gist of the allegations were essentially that they had promised to follow a certain practice and that they didn't follow that promise. So it was almost the identical circumstance. Well, it's — I mean, to say it's almost, I don't think it's almost, but it's not the identical circumstance because in a mutual fund, you have a fundamental investment policy, in our case, to track the index. Then under that, you have certain strategies on how to achieve that investment policy. Those strategies are changeable. So that's not a contract. For example, PIMCO in Hampton said we're not going to invest more than 15 percent in emerging market securities. There's nothing in the structure of that mutual fund that PIMCO could not have said the next day, hey, we're going to still adhere to our fundamental investment objectives, which is binding on us unless there's a shareholder vote. But in terms of our strategy, we're going to change the strategy and we're going to start investing in emerging market funds. Now, because they could change the strategy without a vote, that's not a contract claim. What Hampton did wrong is that they changed the strategy, but they didn't change the document. So they kept on saying to investors, this is our strategy, not a fundamental investment policy, but our strategy, and they weren't adhering to it. That's why Hampton said that even though the complaint says count one, breach of contract, there was no contract. The policy was changeable. And what Hampton did wrong, well, I should say PIMCO, because they're the defendant, what PIMCO did wrong is that they didn't tell the truth about what their strategy  In our case, what Schwab said is not relevant to the contract claim because they couldn't say to investors, we're changing and we're not going to track an index, we're going to go into collateralized mortgage obligations. They couldn't do it because there's a contract. So they could have. I mean, they could have said that in the prospectus, we're changing, and then let somebody bring an action for breach. Well, it would have been a breach of contract, and that's what they did. Except that's what distinguishes, I think, the pre-breach and post-breach classes. I mean, if you'd follow me for a second, just taking the breach class, is it actionable under Massachusetts law that you can have a breach of contract if the breach is disclosed before you enter into the contract? I think not. Well, first, the premise is that the breach was disclosed. Right. And how it was disclosed. I mean, I do think, you know, if you've looked at these prospectuses, they're all initials. So you can't tell. If you're told that this is an index fund and we follow a bond index and you put on then I don't think that you can argue your way out of a breach of contract. It's like if... Well, but if the breach is adequately disclosed before the investor invests, you don't have a breach of contract theory, do you? I think that... Where I'm headed is, and I want your reaction to it, is, and therefore doesn't the misrepresentation or the breach of contract theory as to the breach class depend on the misrepresentation. Well, there are concepts in State law on mitigation or innovation or, you know, acceptance. I don't think that that converts my case to an allegation of falsity. I mean, in order, if I could hearken back to Your Honor's decision in Rains and the Planning, is an allegation of falsity necessary for a determination of the claim? Now, if I have a contract claim and they say that there's disclosure, that's their defense. The motion is directed to the face of the pleading. It's a 12b-6 or judgment on the pleading. Yeah, but the timing of the purchase was 2010, and your allegations say that at the Well, that's not in the complaint. I mean, one could, one could theorize that there were statements after 2007 that were false. But that's not my case. First, the breach occurs before there's a change in disclosure. So once you get the document, it's too late. But if you look at the face of SLUSA... And that later they became untrue. That's where the breach comes from, right? Well, that's not actually in the complaint. I mean, that's what Judge Koh said was artful pleading. It's not in the complaint, and it's not part of the contract claim. Now, if, you know, I mentioned this before, Schwab, in its brief, says that, if I can read just on the bottom of page 7 on to 8, and I'll read it fast, Plaintiff's claims are based on subsequent perspectives and statements of additional information, specifically those issued after August 2007, which continue to make the same representation, even though the Fund allegedly did not follow the fundamental investment objectives after August of 2007. That's not in the complaint. That's what they read in the complaint to satisfy themselves that SLUSA is implicated, but our complaint doesn't allege that. They point it to... Well, your complaint does allege that a particular practice was promised and there was a breach, and they didn't follow that practice anymore, right? Yes. So what's the difference in saying that somehow you didn't allege? Well, it doesn't... I mean, if there was a breach, it had to be because they didn't follow the practice that they promised, or otherwise you wouldn't have a contract. Right. But there's a contract and there's a breach, and I am entitled as the plaintiff to bring that under a contract theory. As Judge Reinhart said in Rains, I'm not required because I could have pled it as a false statement during the breach period. I know that that would implicate SLUSA, so I don't have to allege a claim that's preempted under SLUSA. But that doesn't mean I can't allege my contract claim under Massachusetts law. You know, the issue is whether or not falsity is necessarily, and that's Judge Justice Kagan's language in Manning and your Honor, Judge Reinhart's language in Rains. Manning was a different circumstance, I mean, a different statute altogether. And the Supreme Court, in addressing this statute, expressly stated that we are to interpret it very broadly. Well, that's an interesting issue, and I'm glad you — there are a couple of things I want to say on that. DABIT is a bad case because DABIT was an open market false statement case. Merrill Lynch was issuing false research. So there's no question of falsity. The only question is the narrow definition of purchase and sale. The plaintiff said purchase and sale doesn't consider holders. And the Supreme Court rightfully said this is the type of case that we don't want people running into State court alleging falsity with regard to covered securities. So DABIT certainly said we want to address that because it's a particularly vexatious type of litigation. But the next case was Trois. And Trois is really much more on point because that was a Ponzi scheme and people were suing service providers, and in Trois, Justice Breyer, I believe, said that SLUSA should be addressed narrowly because State law wants to hold these people responsible other than for a misrepresentation if they breach the contract. That is not the type of claim that SLUSA intended to reach. And why Trois is so important is because our claim is based on a fundamental investment policy. Under the Investment Company Act, Congress says this, that a mutual fund, if they establish a fundamental policy, they have to adhere to it, and the purpose of the if you're going to apply SLUSA to this type of conduct in the same way that it was applied to DABIT, you're going to have incongruous results, because in DABIT, there was a particular concern. But there is no congressional concern here with regard to bringing State court actions to enforce fundamental investment objectives. Those are core contract claims under State law. So there's no reason to apply DABIT to that type of conduct when Trois is really the case that's more on point, and Trois said that you should apply SLUSA narrowly so as not to bar claims that States have significant interest in pursuing. I have a minute and a half. I'm sorry. Ginsburg. Before you sit down, just let me ask you one quick question. Have you ever identified a class representative for what you refer to as the pre-breach or the holder class? We have Mr. Holtz purchased in the pre-breach period, and he also purchased in the breach period. But did he hold what he purchased in the pre-breach period? He held throughout. He never sold. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court. Matthew Larrabee for Appelese. This appeal does turn on the question we've been discussing this afternoon, namely, whether a State law class action against the mutual fund, alleging that the mutual fund violated statements in its prospectus, is precluded by SLUSA. The actual issue in dispute is more narrow. All of the elements of SLUSA, save one, are agreed to by the parties. This is a covered class action. It is alleging State law claims, and they are made in connection with the purchase or sale of covered securities. The only issue for both classes is whether the complaint alleges a misrepresentation or omission. If so, the District Court should be affirmed. Now, this Court in Hampton just six weeks ago addressed precisely this question. And the ruling is quite instructive because it sets forth first and foremost the test. How do we tell if a complaint alleges a misrepresentation or omission? Do you agree with your friend on the other side who says that actually there was no alleged omission or misrepresentation? That you have to sort of come up with that? I agree that they scrub those words from the complaint, and I agree that if you apply the right test, as this Court did in Hampton, you find that the allegation is there of misrepresentation or omission. SLUSA is intended to prevent people from doing what Mr. Finkel and his clients are trying to do, which is to say avoid its reach by crafting a complaint that does not explicitly allege a misrepresentation or omission. This Court in Hampton said the test is not what the express allegations are. It does not matter whether magic words are or are not in the complaint. You look at the essential facts. If the essential facts of the complaint make it likely, likely that the case will turn on whether the defendant made a misrepresentation or omission, then misrepresentation or omission is alleged, SLUSA is triggered, it applies. That test is critically important here because almost everything Mr. Finkel said in the last 15 minutes is irrelevant under that test. It does not matter under that test. Have we adopted that test precisely? I mean, the Second and Third Circuits seems to have a narrower view. They talk about essential to the claim. The Sixth Circuit talks about whether it's, I think it eliminates the essential language. And then the Seventh Circuit is even broader and says if it's likely to arise. Does your argument turn on which circuit law we apply? I don't think so because the law is uniform that you do not look to whether the defendant managed a viable state law claim. It doesn't matter. SLUSA preclusion, the bar of SLUSA, is determined by applications of the elements of the statute. The elements do not include, yes, viable state law claim or not viable state law claim. They include those elements and everybody has said in substance, as this court did in Freeman, because Hampton flows directly from Freeman, the gravamen of the complaint. You look at the gravamen of the complaint. So I don't think, I don't see an analytic difference between gravamen of the facts. Well, explain to me as to the pre-breach class how this plays out because it strikes me that it doesn't make any difference whether or not the breach was disclosed or not. As to the pre-breach class, they invested and the contract was arguably breached. The pre-breach class is analytically indistinguishable from the breach class for this reason. It's a holder claim. Pre-breach is kind of confusing, actually. It's a holder claim. What does that mean? That means people bought shares and they held them because they were induced by the defendant to do that. That's the essence of the claim. Well, here, what were they induced by? What induced them to hold their shares and suffer damage? The same representations in the prospectus during the class period where the fund was saying one thing to shareholders and allegedly doing something else. Later, though. Later. Yeah. So there was no misrepresentation at the time of alleged contract formation. Correct. At the time of purchase, that's correct. There is no falsity at the time of purchase, but there is falsity in connection with the claim. The only wrongful conduct for the holder claim is the same wrongful conduct. It's the same investments. It's the same harm. It's the same damage during the same time period. And it's the same things that are not disclosed in the prospectus. Well, except that, let's assume that later when the investment change was made, there had been a change to the prospectus, fully disclosed. There would be a breach. No misrepresentation. If there were a disclosed breach of contract, it's possible that you might not implicate SLUSA. That is not the case here. Why, as to the pre-breach class, does it make any difference? Whether or not there is a misrepresentation or not. I mean, their argument is, and I'm simplifying it, but their argument is we made a contract and it was breached, and we don't care what they said, whether they represented it accurately or not. If there was a breach, we wanted our investment objectives to be preserved. Now, as to the breach class, it's a little different, because if the misrepresentation had been disclosed, then arguably you got no breach of contract because you entered in with all the known facts. I mean, theoretically. The question I think you're asking goes to whether there might be for the pre-breach class, the holder class, a viable state law cause of action. The answer is there might be. What I'm saying is it is totally and completely irrelevant. It does not matter. We assume in every SLUSA preclusion case, we assume that the state law claim may be viable. We are not asking that question. We are asking if that theoretically viable state law cause of action is barred, because Congress said in SLUSA you can pursue that claim, you have that right, you can sue individually, you can get 49 people together, but you cannot do it by class action even if you have a viable claim. But that seems like an incredible congressional overreach, given that Congress had to know that various states like California have class action mechanisms that could be employed. SLUSA is perhaps the clearest example in the country of the Congress explicitly standing up and saying we are stopping this remedy. We are not allowing people to have this remedy. They are not intruding on the state law right. The underlying right remains. Individual claims, 49 claims, banded together at the SEC, arbitrations, the underlying right remains, but the class remedy, you cannot have that, because it is abusive in theory, it poses a risk, and David goes exactly through why that congressional choice was made. It is both very broad, but also very narrow, as this Court has held, broad in its reach within misrepresentations and omission, but narrow in its effect. And that's the balance Congress has made. That's what the Supreme Court has held. And this Court has actually consistently upheld that reach of SLUSA. So if, I mean, what remedy is there for a circumstance theoretically like this? I know you deny the allegations, but where there was a contract formed, breach prospectus, playing out this case, there's no remedy for the investors for breach of the initial contract, right? No, there is a remedy. So again, SLUSA only precludes the class action device. It precludes a procedural vehicle to aggregate these claims. The remedies, there are five remedies available to people. One, they can pursue federal securities law class actions. These plaintiffs don't like that, because they haven't had any losses enough to warrant it, so they need a different theory of damages. Okay, fine, if you don't have claims with damages under the federal securities laws, you have four other choices. You can pursue an individual state law class action, pursuing exactly the theory that Your Honor is describing. You can get up to 49 people together and do it as a mass action. You can pursue that theory in arbitration, and you can get the SEC to take action. And that's exactly the balancing test that Congress enacted. And again, the Davit case is important here. Mr. Finkel is wrong to the extent he is implying Troyce said something about Davit. The thing that it said about Davit that's important is we do not here alter Davit. That sentence is in that opinion precisely to foreclose the kind of arguments that Mr. Finkel was making. And Davit says unequivocally that whether a plaintiff is a purchaser or a seller or a holder is irrelevant under SLUSA. It does not matter who is asserting the claim. If you have falsity, which we have here under the Hampton test, it does not matter who is asserting the claim. Do you see the distinction between this case in Hampton that your opponents would point out, which is they say in Hampton because it was a policy, a strategy that was being employed, that that was very different than a promise to only invest in certain categories? It is a distinction without a difference. It is true that the policy here was fundamental, meaning it could not be changed without a shareholder vote. SLUSA does not ask that question. It may be relevant to whether he has alleged a viable contract claim, but again, that is not the question. Judge Carney got it exactly right in answering this exact question you're asking me. Judge Carney got it exactly right a week ago on Hampton when they filed a holder claim, and he looked at this Court's ruling in Hampton, and he looked at the Supreme Court's ruling in Davit, and he said, you know what, it doesn't make a difference here. It doesn't make a difference whether you're a purchaser or seller or holder because the conduct, the wrongful conduct is, and the only source of damage for anybody is, telling shareholders every day during the class period, we are adhering to our fundamental investment objective. We are not concentrating our assets more than 25 percent in one industry, and during every one of those days during the class period, the fund was doing something else, and that something else is exactly what caused the damage. So the wrongful conduct and the harm, in the words of Judge Carney, are necessarily intertwined with the claim, no matter what Mr. Finkel says. Again, it's not about has he got a better contract claim than in Hampton. It doesn't matter. His claim at core is about misrepresentation, and he does not get to choose. That was the other thing that he got wrong. Hampton, I mean, SLUSA is one of the very few but very well-recognized exceptions to the well-pleaded complaint rule. For SLUSA purposes, plaintiffs are not the master of their own pleadings. This Court said that in Saxton. It's implicit, if not explicit, in the Hampton ruling, and it is essentially explicit in the Freeman case and other cases. They are not the master of their pleading. They don't get to choose this. We have to go look for them. We have to go look at the allegations. When you say this policy was or this agreement was breached, let's say you're in a state court the way you'd like to be with one plaintiff, and he's trying to say that I entered into a contract and they breached that contract. Right. Now, when did they breach the contract? Yeah. Or was it a year later? It's September 1, beginning September 1 of 2007. They breached it every day, according to the complaint, until February 27 of 2009. And when was the contract entered into? At the date of purchase, and that's another thing I have to emphasize. And when was that date? For this plaintiff, it was 2002. And they breached it years later? Years later. I thought you were saying that the contract was breached at all times they were breaching this. During the class period, the class period defined in the complaint. The complaint says the wrongful conduct and the source of damage occurred from September 1 of 2007 to February 27 of 2009. That's all the wrongful conduct. That's when the investments that were not supposed to be made were, in fact, made. That's what we're describing as the breach. That's a breach for people who bought during the class period. It's also the wrongful conduct for people who bought before the class period. And, again, I want to say that Mr. Finkel made the assertion that the contract claim was created by the proxy. It was not. That is a serious misreading of this Court's ruling in Hampton 5. What Judge Corman said in that opinion is offer, acceptance, consideration. The offer is the prospectus. You have a contract claim by virtue of being a shareholder. You become a shareholder by accepting the offer in the prospectus and offering consideration in the form of buying your shares. All of this is around what's in the prospectus, not the proxy statement. And that's why this is so critical to think about this in the context of the federal securities laws. A prospectus is an offering document for security created by the federal securities laws, regulated by the federal securities laws, and the SEC. But the promise document that they're pointing to here, they say, really wasn't that. They're absolutely wrong. The proxy in 1997 was sent out. It did not think about it. What he's saying is in 1997, a proxy went out. It created a contract with everybody who bought shares in this fund for the next 25 years. That's not a rational theory, and it is not what this Court held in Hampton, I mean, in North Star 5. This Court said, you create a contract when you buy your shares. You buy them through the offer made by the fund. That's the prospectus. That's the prospectus. The contract is created by the prospectus. The breach is not doing what you promised in the prospectus. And Hampton teaches us that if you're not doing what you promised, on the same day you're promising it, that's a misrepresentation. And it makes perfect sense to apply SLUSA within that context of the federal securities laws. If this Court were to accept Appellant's argument and say there is no misrepresentation or omission here, it would profoundly upset securities laws because the definition of what is a misrepresentation for SLUSA is the same definition. It's the same statutes, the same language. They're all interrelated. The same definition for a 10b-5 case or a Section 11 or Section 12, the federal securities laws. So if this Court were to issue an opinion that these facts do not constitute a misrepresentation or omission for SLUSA purposes, you would necessarily also be saying they do not constitute a misrepresentation or omission for other purposes. And from that day forward, people like me would come into courtrooms around the country and say, well, the prospectus says one thing, the fund allegedly did something else at the same time, but that's not a misrepresentation. Do you agree that under our companion decision in Hampton that it was error to dismiss with prejudice all of the complaint and that there should at least be an opportunity to plead individual claims, individual state law claims, or even federal securities law claims? A two-part question. I agree because Hampton established it is now the law of the circuit that SLUSA preclusion is subject matter jurisdiction. So in that sense, you cannot reach the merits. It's a different thing to say whether there should be leave to amend in this case. You can, and we respectfully request that you do, affirm an inner final judgment because we are talking about the fifth complaint in this action. This is the third trip to this court, and in this entire process over this nine years, one thing the appellants have made clear is the only remedy we want is a state law class action. We don't want these. The briefs are filled with statements about why they don't want these other remedies. Well, denying leave to amend is a discretionary act that the district court engages in. Shouldn't we at least remand for the district court to consider that question? I don't think so. There was no request to amend that was denied, and there's none in the papers here, and there's none in Mr. Finkel's argument. They are committed. They are chips all in on this claim. And the sad fact is they picked the one remedy Congress has expressly prohibited them from pursuing. Thank you. Roberts. I'd like to start where Mr. Larrabee started and ended. Our claim is based on the proxy statement. This Court in 2015 said, quote, anyone who purchased shares in the fund after 1997 or held shares that he then owned was legally and contractually entitled to have his investment managed in accordance with the proposals in the proxy statement. Now, the proxy statement creates the contract, and contrary to what Mr. Larrabee said, it's as good until you have a shareholder vote that changes it. It may be 25 years, 50 years, or 100 years. Anybody who buys pursuant to that proxy statement has a contract claim. Now, the prospectus discloses what the fundamental investment objective is, but we're not suing on the prospectus. That's our right. So if the prospectus is false after 2007, that's fine. We're not suing on that. We're suing on what this Court found the contract claim was based on the proxy statement. And Mr. Larrabee, who is counsel for the defendants in Hampton, makes the same point. He says, quote, ''North Star defined an exceptionally narrow set of circumstances where a proxy statement, not a prospectus, could give rise to certain contractual obligations.'' Well, I just heard him say that it's not the proxy statement, it's the prospectus that we're relying on. That is not true. Page 27 of his brief in Hampton, he says, ''North Star proxy statement contract essentially not SLUSA.'' The other point is Section 11 or 10b-5 is not an adequate remedy because of the statute of repose. It's not told. Section 11 is a 3-year statute of repose. So if Schwab breached in 2007, anybody who bought that fund before 2004, from 1997 to 2004, would be absolutely without a Federal remedy under Section 11, which is the, you know, the better remedy. Anybody who bought before 2002 wouldn't have a 10b-5 case. And it's not sufficient that you could go into State court with one or two plaintiffs that are suing Schwab for $6,000 or $10,000. That is not a remedy that this Court or Congress or the States should sanction because this is an important principle under the Investment Company Act that a company, once it establishes a fundamental investment objective and has a contract with investors, cannot breach that. And you can't remedy that by having two or three people bring individual actions to State court. Not only that, but other people could join and then you'd have more than 50 and you'd be out under SLUSA. You know, not to repeat myself, but Troyes is directly on point. What Mr. Larrabee talks about, a host of horrors, is only if you have a binding contract with a mutual fund. He's saying that any time there's a false statement in a prospectus now, anybody could plead around SLUSA. But that's not true. You could only plead a contract claim that doesn't depend on allegations. Now, I understand the language in Hampton says, likely, but every time the Court has a — this Court has evaluated it in Fulkowski, in Proctor, in Freeman, it has applied the essential standard or the necessary standard. So when Your Honor sits down, Your Honor sit down and consider what the appropriate standard is in determining SLUSA, I would appreciate it if you look at Justice Breyer's decision in Troyes, as well as the decision in the Second Circuit in Kengade, which I thought was well-reasoned, and balances the different interests, and consider the Manning standard of whether or not falsity is a necessary element of the claim. And don't look behind the complaint to find allegations that don't exist and aren't necessary to the cause of action. Thank you. Roberts. Thank you, counsel. The case just argued will be submitted for decision. Thank you both for your arguments.
judges: Reinhardt, Thomas, O'Malley